IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAWN CLEVELAND SMITH,

                    Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner of
Social Security,

                    Defendant.

Case No. 2:15-cv-00107-AA
OPINION AND ORDER

---

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293
    Attorney for plaintiff

Billy J. Williams
Acting United States Attorney
District of Oregon
Janice E. Hebert
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97201-2902

John C. Lamont
Special Assistant United States Attorney
Office of the General Counsel

Page 1 - OPINION AND ORDER

Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
        Attorneys for defendant

AIKEN, Judge:

    Plaintiff Shawn Cleveland Smith brings this action for judicial review of a final decision for the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). For the reasons below, this case is remanded for further proceedings.

PROCEDURAL BACKGROUND

    On September 15, 2010, plaintiff filed his application for SSI. Tr. 258. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 145. On May 15, 2013, a hearing was held before the Honorable John T. Molleur; plaintiff was represented by counsel and testified therein. The ALJ also heard testimony from a vocational expert ("VE"). Tr. 62-96. The ALJ issued a decision on June 4, 2013 finding plaintiff not disabled within the meaning of the Act. Tr. 19-33. After the Appeals Council declined review, plaintiff filed a complaint in this court. Tr. 1-3.

STATEMENT OF FACTS

    Born on November 1, 1969, plaintiff was 29 years old on the

Page 2 - OPINION AND ORDER

alleged onset date of disability and 43 years old at the time of the hearing. Tr. 62, 277. Plaintiff dropped out of school in the eighth or ninth grade, but eventually earned a GED. Tr. 68. He has a limited work history, last working for three weeks in 2003 as a sorter at a recycling center. Tr. 282. Plaintiff indicated he stopped working to enter a drug treatment program. Tr. 281. Plaintiff alleges disability beginning on February 15, 1999 due to left arm paralysis, anxiety, depression, and cervical spine problems. Id., tr. 298.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla." It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions. Martinez v. Heckler, 807 F. 2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the plaintiff to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an

Page 3 - OPINION AND ORDER

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a plaintiff is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the plaintiff is not disabled.

At step two, the Commissioner determines whether the plaintiff has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If not, the plaintiff is not disabled.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the plaintiff is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the plaintiff can still perform "past relevant work." 20 C.F.R. § 416.920(e). If plaintiff can work, he is not disabled. If he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must establish that the plaintiff can perform other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e)&(f). If the Commissioner meets this burden, the plaintiff is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the application date. Tr. 21. At step two, the ALJ determined that plaintiff has the following severe impairments: "degenerative disc disease of the cervical spine status post discectomy, Hepatitis C, bipolar disorder, and substance abuse." Id. At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of any listing. Tr. 22-24.

Because plaintiff did not establish disability at step three, the ALJ next evaluated how plaintiff's impairment affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work,

> except he can stand and walk for 6 hours each
> out of an 8-hour workday. He can lift and
> carry 20 pounds occasionally and 10 pounds
> frequently. Lifting and carrying should be
> restricted primarily to the upper right
> extremity, with the left upper extremity used
> primarily as a helper, support, or balancing
> arm for the weight. He is unable to climb
> ropes, ladders, or scaffolds. He can crawl
> occasionally. He can occasionally push and
> pull with the non-dominant left upper
> extremity within the weight requirements of 20

> pounds occasionally and 10 pounds frequently.
> He can frequently reach, handle, and finger
> with the left upper extremity. He cannot work
> at unprotected heights. His work is limited to
> uninvolved, three and four step tasks with
> brief and incidental contact with members of
> the general public. His work is limited to a
> low stress environment with only occasional
> decision making or changes in the work
> setting.

Tr. 25. At step four, the ALJ found plaintiff had no past relevant work. Tr. 31. At step five, the ALJ determined that jobs existed in significant numbers in the national and local economy which plaintiff could perform despite his impairments. Tr. 32-33. Accordingly, the ALJ concluded plaintiff was not disabled within the meaning of the Act. Tr. 33.

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) failing to find plaintiff meets Listing § 1.04A; (2) erroneously finding plaintiff's symptom testimony not credible; (3) omitting from the RFC a restriction regarding interaction with authority figures; and (4) improperly evaluating plaintiff's left arm limitations. Pl.'s Br. 5-6.

## I. Listing § 1.04A

Plaintiff argues that at step three of the sequential evaluation process, the ALJ erred by failing to find plaintiff's impairments met or equaled Listing § 1.04A, which addresses disorders of the spine with evidence of nerve root compression. Id. In order to establish Listing § 1.04A, a plaintiff must proffer the

Page 6 - OPINION AND ORDER

following:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of the motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight-leg raise test (sitting and supine).

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04A. The instant case does not involve the lower back; accordingly, in order to meet the listing, plaintiff must show: (1) neuro-anatomic distribution of pain; (2) limitation of the motion of the spine; and (3) motor loss with sensory or reflex loss. Id.

The parties dispute whether Listing § 1.04A further requires that (4) the relevant findings be present in a single examination, and (5) a threshold severity level be met. Plaintiff argues Listing § 1.04A does not require each element to be present in a single examination. Pl.'s Br. 7; Pl.'s Reply 2-3; see Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013). The Radford court held the plaintiff could meet Listing § 1.04A even though his relevant symptoms were not always simultaneously present. Id. at 293 ("Neither the text nor the structure of the regulation reveal an intent to layer a more stringent proximity-of-findings requirement on top of the [12 month] durational requirement."). Accordingly, plaintiff proffered MRI evidence of compromise of the nerve root in the cervical spine in 2009 and 2012, and neuro-anatomic distribution of pain in 2009,

2010, and 2013. Tr. 440, 460, 684, 397, 72-73. Plaintiff further proffered evidence of decreased cervical range of motion ("ROM") in 2010 (tr. 397); motor loss in his left hand and arm in 2010 (tr. 399); and sensory or reflex loss in 2009 and 2010. Tr. 399, 685. Thus, argues plaintiff, the requisites for Listing § 1.04A are satisfied.

Defendant contends plaintiff does not meet the listing because the relevant findings were "spread over four years." Def.'s Br. 6. In support, defendant notes the Commissioner issued an Acquiescence Ruling ("AR") following the Radford decision. Such rulings are issued by the Commissioner when the Social Security Administration ("SSA") determines "a United States Court of Appeals holding conflicts with our interpretation of a provision of [the Act] or regulations and the Government does not seek further judicial review or is unsuccessful on further review." 20 C.F.R. § 416.1485(b). Thus, when the government no longer seeks judicial review, or fails trying, the Commissioner will nonetheless apply a Unites States Court of Appeals holding within its circuit even if it conflicts with the SSA's own interpretation of a provision of the Act. Id., (a).

On September 23, 2015, the SSA issued an AR pertaining to Radford. See AR 15-1(4), available at 2015 WL 5697481. The Commissioner explained the holding in Radford was at odds with the SSA's interpretation of Listing § 1.04A's step three requirements.

Page 8 - OPINION AND ORDER

The AR states, "[o]ur policy is that listing 1.04A specifies a level of severity that is only met when all of the medical criteria listed in paragraph A are simultaneously present[.]" AR 15-1(4), at *4. Once that severity requirement is met, the durational requirement requires "the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months." Id. In contrast, and acquiescing to the holding of the Fourth Circuit Court of Appeals, AR 15-1(4) directs adjudicators within the Fourth Circuit to employ the evaluation method delineated in Radford, "'a more free-form, contextual inquiry that makes 12 months the relevant metric for the assessment of the claimant's duration of disability.'" AR 15-1(4), at *5 (quoting Radford, 734 F.3d at 293). However, the Commissioner stated the holding in Radford "applies only to claims in which the claimant resides in Maryland, North Carolina, South Carolina, Virginia, or West Virginia . . . ." AR 15-1(4), at *5.

As such, it is clear that SSA policy requires the severity and durational thresholds be met in order to meet Listing § 1.04A. Like Social Security Rulings, AR's are "binding on all components of the SSA." 20 C.F.R. § 402.35(b). While SSA policy and rulings do not carry the full force of law, the Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference. See Auer v. Robbins, 519 U.S. 452, 462-63

(1997). The Ninth Circuit, in <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219 (9th Cir. 2009), interpreted <u>Auer</u> to hold that the SSA's policy interpretation should receive substantial deference when the interpretation is a "fair and considered judgement" rather than a convenient litigation position. <u>Bray</u>, 554 F.3d at 1225 (quotation and citations omitted). The policy position set forth in AR 15-1(4) had no effect upon <u>Radford</u>, and thus was not merely a "convenient litigation position." Rather, the AR explained the policy concerns and provided a considered and reasonable judgment. The policy position set forth in AR 15-1(4) is, therefore, accorded substantial deference.

The Commissioner also contends Listing § 1.04A is subject to additional severity requirements pursuant to the statutory introduction section for the musculoskeletal system. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.00. The regulations explain, "[w]e will find that your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement[.]" 20 C.F.R. § 416.925(c)(3) (emphasis added). The relevant portion of the introduction to the § 1.00 listings states, "[r]egardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to effectively ambulate on a sustained basis . . . or the inability to perform fine and gross movements

effectively on a sustained basis for any reason." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2a; see also § 1.00B2b, c. Accordingly, argues the Commissioner, Listing 1.04A requires functional loss in terms of either ambulation impairment or fine or gross movement impairments. Def.'s Br. 8. Some courts have adopted the Commissioner's view. See, e.g., Franco v. Colvin, available at 2014 WL 790912, at *22 (E.D.Cal. Feb. 26, 2014); Gustafson v. Colvin, available at 2014 WL 1686847, at *5 (D.Ariz. April 29, 2014) (unpublished opinion); see also, Audler v. Astrue, 501 F.3d 446, 448-49 (5th Cir. 2007); Leibig v. Barnhart, 243 Fed.Appx. 699, 702 (3rd. Cir. 2007)(unpublished opinion); Soles v. Colvin, available at 2015 WL 7454607, at *7 (M.D.N.C. Nov. 23, 2015) (collecting Third Circuit cases).

However, other courts have chosen not to impose the ambulatory or fine and gross movement provisions mentioned in the introduction to the musculoskeletal system regulations. See, e.g., Espejo v. Astrue, available at 2009 WL 1330799, at *3 (C.D.Cal. May 11, 2009)(unpublished opinion); Abdul v. Colvin, available at 2015 WL 1387944, at *2 (E.D.Cal. March 25, 2015); Stewart v. Colvin, available at 2015 WL 275737, at *8 (D.Mont. Jan. 22, 2015)(unpublished opinion); Christensen v. Colvin; available at 2013 WL 2338330, at *5 (E.D.Wash. May 29, 2013)(unpublished opinion); Burlew v. Astrue, available at 2012 WL 1116525, at *5 (D.Or. April 3, 2012)(unpublished opinion); see also, Radford, 734

F.3d at 291; <u>Ribaudo v. Barnhart</u>, 458 F.3d 580, 583-84 (7th Cir. 2006); <u>Vossen v. Astrue</u>, 612 F.3d 1011, 1015 (8th Cir. 2010); <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 735 (10th Cir. 2005). For the reasons that follow, the Court finds plaintiff is not required to establish ambulatory or fine or gross motor skill impairment per the introduction section of § 1.00B2 in order to meet Listing 1.04A.

First, although the introduction defines the terms "ambulate effectively" and "perform fine and gross movements effectively," neither the introduction to § 1.00 nor the text of Listing § 1.04A state that the terms are necessarily requisites for the listings that follow. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1)&(2). Rather, the terms are used to define functional loss in § 1.00B2a, and then are actually defined in § 1.00B2b.

Next, as a matter of construction, the text of the regulations would include redundant language if the introductory section of § 1.00 established additional requirements regarding ambulation or fine/gross movements. Listing § 1.02B, for example, explicitly requires a claimant to establish a condition which results in "inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.02A, B. Similarly, Listings §§ 1.02A, 1.03, and 1.04C require a claimant establish a condition which results in "inability to ambulate effectively, as defined in 1.00B2b." <u>Id.</u> Thus, if the

Commissioner's interpretation of the regulatory scheme were correct, provisions of the aforementioned listings would be redundant, defying a core tenet of statutory interpretation. See, e.g., Republic of Ecuador v. Mackay, 742 F.3d 860, 864 (9th Cir. 2014) ("it is a cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant"). As such, the court finds the Commissioner's contention that § 1.00B2 establishes requirements which apply to all the listings under § 1.00 implausible.

Further, the ALJ himself did not indicate that § 1.00B2 applied to § 1.04A. The ALJ explains, "[i]n order to meet or equal § 1.04, the claimant must produce evidence . . . of nerve root compression, limited range of motion, or motor loss accompanied by sensory or reflex loss and positive straight leg raising." Tr. 22. The ALJ also notes, "inability to ambulate effectively[] as defined in § 1.00B2b" is a requirement to meet "a listing" under § 1.04, although the ALJ omitted a portion of the statute, as § 1.00B2a explains functional loss may be due to inability to effectively ambulate *or* inability to effectively perform fine and gross movements. Id., § 1.00B2a. Further, the ALJ accurately noted that § 1.04C is established, in part, by showing an inability to ambulate effectively as defined in § 1.00B2b. Tr. 22; see §1.04C.[1]

---

[1] Listing § 1.04C requires: "Lumbar stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular

However, plaintiff does not now allege the ALJ erred in finding he does not meet Listing § 1.04C.

The ALJ's perfunctory analysis of Listing § 1.04A does not address any requirement arising under § 1.00B2, nor does the ALJ indicate explicitly or implicitly that plaintiff did not meet the listing because he failed to establish a requirement under §§ 1.00B2b or c. Tr. 22-23. Rather, the ALJ simply noted, "the finding that the claimant does not meet or equal listing § 1.04A or any other listing is supported by the state agency medical consultants' opinions." Tr. 22. Accordingly, even assuming Listing § 1.04A required a showing of inability to effectively ambulate or perform fine/gross movements, the ALJ did not invoke that rationale in finding the listing was not met. Id. Accordingly, to the extent the Commissioner argues plaintiff does not meet § 1.04A because he did not proffer evidence relevant to §§ 1.00B2b or c, the argument is foreclosed because the Court may not engage in *post hoc* justification on grounds not relied upon by the ALJ. See S.E.C. v. Chenery, 332 U.S. 194, 196 (1947).

Based on the foregoing, the court finds that in order to meet Listing § 1.04A, plaintiff must establish (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; as well as the following severity requirements: (2)

---

pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

limitations of motion of the spine; and (3) motor loss ("atrophy with associated muscle weakness or muscle weakness") accompanied by sensory or reflex loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Further, the findings must be present simultaneously, as explained in AR 15-1(4). Additionally, plaintiff must establish the impairment(s) satisfies the 12-month durational requirement. 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4); AR 15-1(4), at *5.

In response, defendant argues plaintiff failed to show that the requisite findings manifested simultaneously. Def.'s Br. 6-7. Plaintiff responds that all the relevant findings were reported during an examination by John Ellison, M.D. on November 20, 2010. Pl.'s Reply 3-4. Dr. Ellison noted an MRI from December 2009 showed "C6-7 herniated disk with compromise on the left," satisfying the threshold inquiry. Tr. 397. The doctor also noted complaints of neck and left arm pain, which satisfies the first prong of Listing § 1.04A. Id. Plaintiff had limitation in ROM of the cervical spine, exhibiting "[f]lexion to 50 degrees, extension to 30 degrees, lateral bending 30 degrees to the left and 45 degrees to the right, [and] rotation 70 degrees to the left and 80 degrees to the right." Tr. 399, 401. All other ROM findings were within normal limits. Id. Accordingly, the second requisite is satisfied.

On the neurologic exam, Dr. Ellison found plaintiff's coordination was "slightly impaired in the left hand." Tr. 399. The doctor also reported "weakness and atrophy left triceps 4/5,

Page 15 - OPINION AND ORDER

extension left wrist and fingers 4/5, possible mild atrophy left pectoral[.]" Id. Plaintiff's sensory exam revealed, "reduced pinprick and temperature entire left arm and hand[.]" Id. Dr. Ellison's diagnoses included "[d]egenerative disk disease cervical spine with radiculopathy left arm with weakness of extension at elbow, wrist, and fingers, obvious triceps atrophy, impaired sensation left arm and hand[.]" Id. Thus, Dr. Ellison's November 20, 2011 findings include all of the severity elements of Listing § 1.04A.

Other findings consistent with Dr. Ellison's are found elsewhere in the record. Robert Buza, M.D., noted neck and left arm pain along with numbness, tingling, and weakness, although the doctor also reported "good motion of the cervical spine." Tr. 684-85. On April 9, 2013, Kenneth M. Little, M.D. found foraminal stenosis at C6-7, 4/5 left biceps and triceps strength, and deltoid and triceps atrophy. Tr. 593. Although Dr. Little did not report ROM findings, he noted plaintiff's "debilitating" pain, neurologic defects, and muscle atrophy, prompting the doctor to recommend surgical intervention. Id.

Although the ALJ summarized the November 20, 2011 examination by Dr. Ellison, the ALJ failed to assess whether Dr. Ellison's findings met or equaled Listing § 1.04A. Tr. 22-23, 27-28. Instead, the ALJ noted that the state agency medical consultants determined plaintiff did not meet or equal Listing § 1.04A, and adopted their

Page 16 - OPINION AND ORDER

findings. Tr. 22-23. Despite the evidence that Dr. Ellison found all of the requisites satisfied on November 20, 2011, the ALJ also explained, erroneously, that plaintiff failed to submit evidence to refute the opinions of the state agency consultants. Tr. 23.

As such, the ALJ erred by failing to review plaintiff's particular symptoms as they relate to Listing § 1.04A. At step three, the ALJ is compelled to "review the symptoms . . . and make specific findings essential to the conclusion." Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). By deferring to the medical consultant record, the ALJ failed to uphold the proper legal standard. In light of plaintiff's argument that he has met all of the requirements under Listing § 1.04A, including the simultaneity requirement discussed above, the court finds plaintiff has presented a plausible theory as to how his impairments meet the listing. See Lewis, 236 F.3d at 514. Accordingly, the ALJ's conclusion regarding Listing § 1.04A cannot be upheld.

II. Plaintiff's Credibility

Plaintiff argues the ALJ erroneously discredited his impairment allegations. The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented

objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." Id. at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. See Batson, 359 F.3d at 1197.

The ALJ found "inconsistencies in the record" that diminished plaintiff's credibility. Tr. 29. Specifically, the ALJ explained plaintiff reported last working for pay in 2005, but other evidence of record suggested he last worked in 2004 repairing windshields, and was subsequently "doing lots of labor 'under the table.'" Id. At the hearing, the ALJ asked plaintiff if the last time he worked

for pay was around 2003. Tr. 71. Plaintiff replied in the affirmative, but clarified that he had also worked under the table for cash, as recently as 2005. Tr. 71. Plaintiff's explanation, if inartfully articulated, takes full account of his "official" and "under the table" income, and is consistent with his previous explanation of working in windshield repair before earning unreported income. As such, the ALJ's finding is erroneous. Further, to the extent the Commissioner argues that accepting payment "under the table" is a valid credibility factor (Def.'s Br. 14-15), the argument is unavailing as the rationale was not invoked by the ALJ. Chenery, 332 U.S. at 196. The ALJ relied only on evidence of inconsistency. Tr. 22-23. This finding cannot be upheld.

The ALJ also impugned plaintiff's credibility because his "subjective complaints and alleged limitations are not consistent with the objective examination reports." Tr. 29. The ALJ explained, "he alleged a great deal of atrophy in his left upper extremity, but it is his non-dominant extremity and the physical examination showed only minimal differences in size." Tr. 29-30. In his decision, the ALJ does not provide citations to the allegedly inconsistent objective reports. As discussed above, plaintiff's doctors noted muscle atrophy in his left extremity on more than one occasion. For example, Dr. Little reported "left deltoid and triceps atrophy" on April 9, 2013, and listed "presence of muscle

atrophy" as a factor weighing in favor of surgical intervention. Tr. 593. At least some atrophy was present years earlier, as Dr. Ellison found left triceps atrophy and "possible atrophy left pectoral" in November 2010. Tr. 399.

The Ninth Circuit has repeatedly held, "a claimant is not required to show that her impairment could reasonably be expected to cause the severity of symptoms she alleged; she need only show that it could reasonably have caused some degree of the symptoms." Garrison v. Colvin, 759 F.3d 995, 1014, (9th Cir. 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)(internal quotation marks omitted)). Thus, while plaintiff may have alleged "a great deal of atrophy in his left upper extremity," the fact that two doctors found atrophy in his left upper extremity establishes plaintiff's allegation was *consistent* with the objective medical evidence. As illustrated in Garrison and Smolen, and numerous other Ninth Circuit cases, it is improper for the ALJ to find an allegation inconsistent with the objective evidence when the only alleged inconsistency is the subjective symptom's alleged degree of severity.

The Commissioner argues plaintiff alleged that his left arm was paralyzed, which contradicted exam findings showing diminished strength and sensation. Def.'s Br. 14. Indeed, in his original disability report, plaintiff listed "left arm paralysis, anxiety, depression, cervical spine" as limiting his ability to work. Tr.

Page 20 - OPINION AND ORDER

281. Later, in his appeal worksheet, plaintiff indicated that since his original report, his left arm paralysis had worsened. Tr. 308. During the hearing, plaintiff explained he had "a bone deformity pushing up against my spinal cord, which was causing partial paralysis throughout my arms, especially my left arm." Tr. 72. Nevertheless, the Commissioner's argument fails for two reasons.

First, the ALJ did not indicate plaintiff's credibility was inconsistent based on allegations of paralysis. Once again, the court may not affirm the decision based on grounds the ALJ did not invoke. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2007). Rather, the ALJ noted only plaintiff's statements regarding the severity of his muscle atrophy. Second, to the extent the Commissioner argues the ALJ's statement, "claimant's subjective complaints and alleged limitations are not consistent with the objective examination reports," encompasses or refer to plaintiff's paralysis allegations, the ALJ's reasoning lacked adequate specificity. The ALJ's vague statement is insufficient to support an adverse credibility finding. Vazquez v. Astrue, 572 F.3d 586, 592-93 (9th Cir. 2009). This finding cannot be upheld.

The ALJ further discredited plaintiff because "the consultative examiner gave [plaintiff] a high GAF score, and [plaintiff's] mental status examinations during the relevant period appear to be fairly good except for an episode when he was on suicide watch . . . ." Tr. 30. In support of the ALJ's finding, the

Commissioner notes plaintiff "complained of disabling depression and anxiety . . . [although] the mental health evidence was relatively benign." Def.'s Br. 14. However, the ALJ's rationale is internally inconsistent. During the hearing, plaintiff explained his mental health history, including periods of suicidal ideation. Tr. 83-85. He further explained that he no longer has suicidal ideation, and is now "optimistic about my life." Tr. 85. The ALJ provided no specific reasons to question the veracity of plaintiff's claims of feeling depressed or worthless in the past. To the contrary, the ALJ acknowledged plaintiff had been on "suicide watch" at least once, and also found he suffers from the severe impairment of bipolar disorder at step two of the sequential evaluation process. Tr. 21. Bipolar disorder, which was once called "manic depression," is generally characterized by cycling symptoms of depression and mania. See Am. Psych. Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th ed. TR 2000)("DSM-IV-TR"). Furthermore, as before, it is inappropriate for the ALJ to impugn plaintiff's credibility because the severity of plaintiff's subjective symptom allegations are unsupported by objective evidence. Lester, 81 F.3d at 834. The ALJ's rationale is without merit.

Finally, the ALJ invoked plaintiff's substance abuse as a reason to impugn his credibility. Plaintiff argues the mere assertion of use/abuse of substances does not fall within the scope

of acceptable credibility evaluation. Def.'s Br. 16 (quoting <u>Fair v. Bowen</u>, 885 F.2d 597, 604 n.5. The Commissioner concedes that plaintiff's use of homemade alcohol during his incarceration is insufficient to support the ALJ's credibility finding. Def.'s Br. 14. Accordingly, the ALJ's rationale fails.

Based on the foregoing, none of the rationales provided by the ALJ meet the legal threshold of specific, clear and convincing. The ALJ's credibility finding is, therefore, erroneous.

III. <u>RFC Formulation</u>

A. *Supervisor Interaction*

Plaintiff alleges the ALJ failed to adequately account for certain social functioning limitations in formulating plaintiff's RFC. Specifically, plaintiff contends the ALJ erred by not including any limitation on interacting with supervisors, despite the opinions of state agency non-examining physicians Bill Hennings, Ph.D. and Joshua Boyd, Ph.D. Pl.'s Br. 12. Drs. Hennings and Boyd opined, in part, that plaintiff "is intimidated by authority figures, and so would benefit from an understanding supervisor." Tr. 113, 131.[2]

Plaintiff argues that because the ALJ accorded the opinions of Drs. Hennings and Boyd "substantial weight," and in fact found

_____

[2] Drs. Hennings and Boyd also opined that "there is no evidence [plaintiff] cannot sustain a routine or work in proximity with others," and that "[plaintiff] is unlimited in his ability to interact with the public . . . ." Tr. 112-13, 130-31.

"claimant is more limited in social functioning with the general public and in the ability to handle stress than the state agency consultants opined," it was error to omit a limitation regarding interaction with authority figures in the workplace. Pl.'s Br. 12. In support, plaintiff cites Social Security Ruling ("SSR") 85-15, which states "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." SSR 85-15, <u>available at</u> 1985 WL 56857, at *6. Plaintiff also notes that, contrary to the doctors' opinions, the ALJ limited plaintiff to no more than "brief and incidental contact with members of the public." Tr. 30-31.

Defendant argues the ALJ was not compelled to include "an understanding supervisor" in the RFC formulation because rather than characterize it as a requirement or limitation, the doctors explained only that plaintiff "would benefit from an understanding supervisor." Tr. 113, 131; Def.'s Br. 10. The Commissioner's argument is well taken, as a number of courts have found no error where an ALJ omits from the RFC recommendations that are not stated as imperatives. <u>See, e.g.</u>, <u>Carmickle v. Comm'r of SSA</u>, 533 F.3d 1155, 1165 (9th Cir. 2008); <u>Jackson v. Colvin</u>, <u>available at</u> 2014 WL 5148438, at *8 (D.Or. Oct. 14, 2014); <u>Goin-Sprague v. Colvin</u>, <u>available at</u> 2015 WL 6121982, at *7 (D.Or. Oct. 15, 2015).

However, this case is distinguishable. In addition to suggesting plaintiff would benefit from an understanding

supervisor, both doctors' reports indicated plaintiff was "moderately limited" in his "ability to accept instructions and respond appropriately to criticism from supervisors." Tr. 113, 131. In contrast to the statement "would benefit," "moderately limited" is unequivocally a limitation. As such, the ALJ should have either included the limitation in the RFC, or provided a legally sufficient rationale to reject the opinions. The ALJ did neither. Moreover, as the ALJ indicated plaintiff's social functioning and ability to handle stress were *more* severely limited than as opined by Drs. Hennings and Boyd, the error is all the more glaring. Although the Commissioner asserts plaintiff "has not accurately characterized the DDS psycchologist opinions," the Commissioner fails to acknowledge that the doctors included the aforementioned moderate limitation. See Def.'s Br. 9-11. The ALJ erred in this regard.

Additionally, the "moderate limitation" in dealing with authority figures was arguably supported by the opinion of Kay Dieter, M.D. Dr. Dieter opined, in part, that plaintiff's "ability to interact with co-workers, supervisors, and the public . . . may be somewhat limited." Tr. 395. The ALJ generally accorded Dr. Dieter's opinions "substantial weight," however, he accorded only "limited weight" to her opinion regarding plaintiff's ability to interact with supervisors. Tr. 30. In support, the ALJ indicated Dr. Dieter's opinion was "not consistent with the record as a

whole." Id. However, based on the discussion above, Dr. Dieter's
opinion was consistent with those of Drs. Hennings and Boyd, the
only other medical providers of record to opine on plaintiff's
limitations regarding supervisor interaction. Further, to the
extent the ALJ did not include Dr. Dieter's opinion in the RFC
because the supervisory issue was not couched as an imperative,
that rationale was not invoked by the ALJ, and therefore is
unavailing. See id. The Commissioner offers no justification for
the rejection of this portion of Dr. Dieter's opinion. Accordingly,
the ALJ's finding that Dr. Dieter's opinion was inconsistent with
the record is factually unsupported, and insufficient as a matter
of law. Remand is necessary to address these issues.

B. *Left Upper Extremity Impairment*

Plaintiff argues the ALJ failed to adequately account for
limitations relative to plaintiff's left upper extremity. Plaintiff
contends the ALJ provided internally inconsistent findings in
assessing the opinions of state agency medical experts Sharon Eder,
M.D., and Neal Berner, M.D. Pl.'s Br. 13-14. Drs. Eder and Berner
reviewed the record and determined plaintiff was limited to light
work with occasional pushing and pulling with the left upper
extremity. Tr. 111, 129. They further found plaintiff limited to
"occasional fine and gross manipulative" use of the left upper
extremity. Id. The ALJ explained he accorded limited weight to the
doctors' assessment, instead finding plaintiff could frequently

reach, handle, and finger. Tr. 31. However, the ALJ also found plaintiff was "more limited than the doctors suggested" regarding his ability to grip, twist, lift, or carry with the left upper extremity such that he was unable to perform those actions at all. Id., tr. 25.

Plaintiff contends frequent reaching, handling, and fingering is inherently foreclosed by the inability to grip, twist, lift, or carry, because handling and fingering "largely overlaps" with gripping, lifting, and carrying. Pl.'s Br. 14. Plaintiff argues that because handling involves "seizing, holding, grasping, turning" and fingering involves "picking, pinching," he cannot "grip, lift or carry" with his upper left extremity. Id. (citing SSR 85-15). The court agrees that to the extent "handling" involves "seizing, holding, or grasping," it appears to overlap, at least to some extent, with "gripping." However, in his initial application and on reconsideration, plaintiff was found not disabled despite the fact that those determinations were premised on the more stringent standard of "occasional" fingering and handling. Def.'s Br. 12. Plaintiff does not offer a rebuttal to the Commissioner's argument. See Pl.'s Reply.

The ALJ and VE are the adjudicators best situated to identify and resolve any conflict regarding plaintiff's upper extremity limitations. As such, if relevant to the sequential evaluation process, the ALJ should revisit this issue upon remand.

IV. <u>Remand</u>

The court has discretion to reverse the Commissioner's final decision and remand for further proceedings or to award benefits. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1177 (9th Cir. 2000). Whether to remand a case for further proceedings depends on the likely utility of such proceedings. <u>Id.</u> As explained above, the ALJ's decision contained a number of legal errors which require remand. Plaintiff argues the case should be remanded for immediate payment of benefits. Pl.'s Br. 17-18. In order to remand for immediate payment of benefits, the following factors must be satisfied: (1) the record has been fully developed and further proceedings would not be useful; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence was credited as true, the ALJ would be required to find the plaintiff disabled upon remand. <u>Garrison</u>, 759 F.3d at 1020.

Here, it is clear the ALJ failed to properly evaluate whether plaintiff met or equaled Listing § 1.04A. Further, the ALJ improperly discredited plaintiff's credibility, which impacted steps three, four, and five of the sequential evaluation process. Nonetheless, outstanding issues necessitate further proceedings. Importantly, although plaintiff established that all of the severity requisites of Listing § 1.04A were met during the November 20, 2010 visit to Dr. Ellison, it remains unclear if and when plaintiff met the Listing's durational requirement. For example,

although Dr. Buza reported some of the criteria for Listing § 1.04A in November 2009, the required ROM findings were absent. See tr. 685 ("good motion of the cervical spine"). Similarly, Dr. Little's April 2013 examination did not include ROM findings. As explained in AR 15-1(4), "[i]n addition to meeting the severity requirement, in order to meet the duration requirement, the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months." See 20 C.F.R. §§ 404.1525(c)4, 416.925(c)4.

Thus, the record requires further development in order to establish if and when plaintiff met the 12-month durational requirement of Listing § 1.04A. In the event the ALJ finds plaintiff does not meet the 12-month durational requirement, the ALJ must then determine if, based on all of plaintiff's symptoms, plaintiff *equals* Listing § 1.04A. Further, on remand, the ALJ must not rely upon the erroneous credibility findings set forth in the adverse decision of June 4, 2013 when re-evaluating the medical and testimonial evidence. Finally, the plaintiff may proffer additional evidence of his impairment(s) for consideration at the next hearing. Finally, if necessary, the ALJ must resolve the extent of plaintiff's upper extremity limitations and craft a new RFC accordingly.

IV. Conclusion

For the foregoing reasons, the Commissioner's decision is

REVERSED and this case is REMANDED for additional proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this ___5th___ of February 2016.

_____
Ann Aiken
United States District Judge